UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| McALLISTER OLIVARIUS, | ) Civil Action No.: 1:17-cv-9941 |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| MARK MYERS MERMEL, | ) |
| Defendant. | ) |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff McALLISTER OLIVARIUS ("Plaintiff"), by and through its undersigned attorney, complains of Defendant MARK MYERS MERMEL ("MERMEL") and in support respectfully alleges, upon information and belief, the following:

**PARTIES**

1. Plaintiff is a general partnership operating as a law firm both in the United Kingdom and the United States. Plaintiff maintains offices in Maidenhead and Henley-on-Thames, England, and Saratoga Springs, New York. Plaintiff represents clients in multiple jurisdictions, including New York, Connecticut, New Hampshire, Massachusetts, Minnesota, the District of Columbia, Idaho, Virginia, and England and Wales, where its attorneys are duly

licensed to practice law, and in association with local counsel in other jurisdictions throughout the country.

2. MERMEL is an experienced businessman, real estate developer, and former candidate for Lieutenant Governor of New York with postsecondary degrees from the University of Vermont, Columbia University and, recently, the Divinity School at Yale University. Upon information and belief, at all times material to Plaintiff's cause of action, MERMEL was a citizen and resident of the State of New York.

## JURISDICTION AND VENUE

3. Plaintiff's complaint is based on a violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

4. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 without regard to the amount in controversy.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because MERMEL resides within this District and, upon information and belief, a substantial part of the events giving rise to Plaintiff's cause of action occurred within this District.

## GENERAL ALLEGATIONS

*Plaintiff Is Widely Known for Excellence in Sexual Discrimination Law*

1. McAllister Olivarius was formed in 1996 by Dr. Ann Olivarius as a general practice law firm, which has come to specialize in sex discrimination and sexual harassment in employment and educational settings. The firm's UK office opened in 1999. It has received LEXCEL accreditation from the Law Society of England and Wales each year since 2010, based

on a rigorous assessment of its client care and quality control. Its LEXCEL assessor has placed it in the top 2.5% of English law firms in these areas.

2. Dr. Ann Olivarius graduated *summa cum laude* from Yale College in 1977 before obtaining a doctorate in Economics on a Rhodes scholarship to Oxford University. In 1986, Dr. Olivarius graduated from Yale Law School and the Yale School of Management with highest honors. She is licensed to practice law in New York, New Hampshire, Minnesota, the District of Columbia, Idaho and Virginia. She is also a solicitor of England and Wales.

3. Dr. Olivarius worked with Catherine MacKinnon and others to develop the legal theory now known as sexual harassment and was a plaintiff in the first case to hold that sexual harassment of students by professors at a federally funded university was a violation of Title IX, *Alexander v. Yale*, 459 F. Supp. 1 (D. Conn. 1977), *aff'd* 631 F.2d 178 (2d Cir. 1980). In 1992, she received the Maria Miller Stewart Legal Challenge Award from the Connecticut Women's Education and Legal Fund for her work on this case. In 2012, the American Civil Liberties Union selected Dr. Olivarius for inclusion on its list of the "Nine Most Influential Actors in the History of Title IX." She has a substantial Title IX practice and is among the country's leading Title IX lawyers. On December 19, 2017, *Nature* magazine, the leading science journal in the United States, placed her on its annual "Nature10" list of "ten people who mattered this year" for her work in fighting sexual harassment at universities. Nelson Mandela, in introducing her to a large group of Rhodes Scholars in 2003, described her as "a lawyer who has advised me well and who has courageously advanced the cause of justice, and improved life opportunities, for hundreds of millions of women, blacks and disadvantaged, worldwide."

4. Dr. John F. (Jef) McAllister graduated *summa cum laude* from Yale College in 1977 and Yale Law School in 1986, with honors. He was a law clerk to Hon. Robert F.

Peckham, Chief Judge of the U.S. District Court for the Northern District of California. In 1983, Dr. McAllister received a doctorate in Modern History from the University of Oxford as a Marshall Scholar. Dr. McAllister is licensed to practice law in New York and Connecticut and is a Registered Foreign Lawyer with the Solicitors Regulation Authority of England and Wales.

5. Dr. McAllister has worked full time for McAllister Olivarius since 2007, and has been centrally involved in multiple high-profile sexual harassment cases. Previously he worked for TIME Magazine, where he was Diplomatic Correspondent, White House Correspondent, Deputy Bureau Chief in Washington, and London Bureau Chief. In 2006 he won the Foreign Press Association's award for the best story written by a foreign correspondent in London. His understanding of how clients' experiences are perceived by a larger audience has been a significant contribution to the firm's practice.

6. Since 1996, Plaintiff has regularly, continuously, and systematically used its trade name "McAllister Olivarius" in connection with the marketing and promotion of legal services throughout the United States and abroad. Plaintiff vigorously promotes itself through stories about its cases in serious media outlets and online through a targeted strategy centered on its website and social media presence. Since January 1, 2014, Plaintiff's website, www.mcolaw.com, has attracted more than 78,000 unique visitors worldwide. Over 800,000 people have viewed information distributed by Olivarius via Twitter in October and November 2017, out of more than 3.5 million views in 2017. As of the date of this filing, there were 128 separate mentions of the firm's name on the Lexis-Nexis "News" database. The firm's current case on behalf of nine professors and students against the University of Rochester for sexual harassment and retaliation has generated stories in multiple outlets around the United States, including the *New York Times*, *USA Today*, *Nature*, *Science*, the *Washington Post*, *Mother Jones*,

Buzzfeed, the CBS Morning News, and TIME Magazine, which two weeks ago named two of the plaintiffs among its "Persons of the Year," the "Silence Breakers," for 2017. The firm's other recent cases have been covered by additional U.S. publications, including *Huffington Post*, the *Chronicle of Higher Education, Inside Higher Ed*, and *Los Angeles Times*.

7. As a result of Plaintiff's regular, continuous and systematic use of its trade name in interstate commerce and the quality of its legal services rendered under the trade name, consumers have come to favorably recognize and identify Plaintiff as a nationwide and indeed international expert in matters relating to unlawful discrimination in employment, education, "revenge pornography," and other areas where Plaintiff concentrates its work.

### *MERMEL Retains Plaintiff Because of Its Reputation for Legal Expertise in Sexual Harassment Law*

8. On or about May 15, 2012, MERMEL retained Plaintiff as legal counsel in connection with a dispute with Yale University in New Haven County, Connecticut (the "Connecticut Dispute"). MERMEL selected Plaintiff because of its reputation and experience in sexual harassment litigation and its familiarity with Yale.

9. The terms of Plaintiff's representation of MERMEL in the Connecticut Dispute were memorialized in a written engagement letter, signed by MERMEL on May 15, 2012 (the "Engagement Letter"), attached hereto as Exhibit A.[1]

10. Under the terms of the Engagement Letter, Plaintiff agreed to provide legal services, and MERMEL agreed to pay for those services.

---

[1] Plaintiff has redacted the Engagement Letter to exclude all information relating to the representation to protect MERMEL's confidences to the extent possible.

11. Plaintiff dutifully represented MERMEL in the Connecticut Dispute, but MERMEL refused, and continues to refuse, to pay Plaintiff as required by the terms of the Engagement Letter despite regularly praising Plaintiff for the quality of its representation.

12. Between May 2012 and August 2014, Plaintiff sent eight invoices to MERMEL, each setting forth the fees owed for legal representation provided, detailing the time spent and work performed by Plaintiff.

13. On June 20, 2016, after multiple attempts to collect on the unpaid invoices, Plaintiff filed a civil action for breach of contract and quantum meruit in the Superior Court for New Haven County, Connecticut, seeking contractual damages of $346,706.87. Plaintiff's action remains pending.

### *MERMEL Misappropriates Plaintiff's Distinctive Trademark to Extort Plaintiff into Forgiving the Debt Owed*

14. Throughout 2015 and 2016, in response to Plaintiff's efforts to collect the unpaid balance MERMEL owes under the Engagement Letter, MERMEL engaged in a pattern of bad-faith conduct designed to harass and intimidate Plaintiff into forgiving the unpaid balance.

15. In a threatening attempt to damage Plaintiff's professional reputation, MERMEL registered the domain name "mcallisterolivariustruth.com," intentionally and wrongfully using Plaintiff's trademark within his registered domain name. Screen shots of mcallisterolivariustruth.com are attached hereto as Exhibit B.

16. MERMEL populated his website with fictional biographies of attorneys with no relationship to Plaintiff or its widely known expert legal practice, omitted detailed descriptions of the specific practice areas in which Plaintiff offers legal services to its clients in the United States and abroad, and established an online submission page to intercept potential clients seeking Plaintiff's legal representation.

17. On July 1, 2016, in response to Plaintiff's written demand for payment, MERMEL emailed Plaintiff threatening to further populate the website with select public documents that, he claimed, would cast Plaintiff and its principals in a negative light with "other potential clients" and "cripple if not close" its business.

18. To avoid these disastrous consequences, MERMEL offered in his email to forgo his planned assault on Plaintiff's character if both parties would simply "walk away" from the unpaid balance or, alternatively, Plaintiff reduced its balance to $44,293, amounting to a sizable profit to MERMEL.

### *Plaintiff's Motion to Amend Its Connecticut Complaint to Assert this Claim Was Denied*

19. On June 27, 2017, Plaintiff sought leave to amend its original complaint in the New Haven County Superior Court to join its anti-cybersquatting claim against MERMEL along with its breach of contract and quantum meruit claims.

20. In response to Plaintiff's Request for Leave to File an Amended Complaint, MERMEL unilaterally removed the website from the internet, destroying the very evidence Plaintiff cited as the basis for its amended complaint.

21. On July 24, 2017, Plaintiff subsequently filed a Request for Leave to File a Second Amended Complaint, adding an intentional spoliation of evidence claim to its anti-cybersquatting claim.

22. MERMEL filed an objection to Plaintiff's Request, and the New Haven County Superior Court denied Plaintiff's Request on September 25, 2017, ruling that Plaintiff's new claims were insufficiently related to its debt collection claims to warrant joinder in that action.

## CLAIMS FOR RELIEF

### COUNT 1
### VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT
### 15 U.S.C. § 1125(d)

23. Plaintiff incorporates and re-alleges each and every allegation set forth in the preceding paragraphs as if set forth here in full.

24. Plaintiff is the owner of a valid and enforceable unregistered trademark in the "McAllister Olivarius" trade name.

25. Plaintiff has regularly, continuously, and systematically used the McAllister Olivarius trademark in commerce since 1996.

26. Plaintiff's trademark is inherently distinctive or has garnered a secondary meaning through regular and continuous use in the legal marketplace such that in the minds of the legal community Plaintiff's mark has become synonymous with and singularly identifies Plaintiff's business.

27. MERMEL registered and used a domain name that, at the time of registration, was identical or confusingly similar to Plaintiff's trademark.

28. MERMEL intentionally infringed upon Plaintiff's trademark with the malicious intent to divert potential clients seeking Plaintiff's legal services away from Plaintiff's website and to his own so as to harm Plaintiff's goodwill and cause confusion as to the source, sponsorship, affiliation, or endorsement of his website.

29. Because of MERMEL's unlawful and intentional use of Plaintiff's protected trademark within his domain name, consumers were likely to confuse or mistake MERMEL's fabricated website for the reputable legal services Plaintiff offers to consumers.

30. MERMEL's registration and use of Plaintiff's trademark in his domain name was done with a bad faith intent to profit from Plaintiff by extorting it into dramatically reducing the amount due for its services to MERMEL in exchange for discontinuing his use of its protected trademark.

## DEMAND FOR JURY TRIAL

31. Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against Defendant MERMEL awarding:

(a) Damages in amounts to be established at trial, including without limitation, all profits gained by MERMEL and all actual damages suffered by Plaintiff as a result of the allegations stated above;

(b) At Plaintiff's prejudgment election, statutory damages in lieu of actual damages in an amount not less than $1000 nor greater than $100,000 pursuant to 15 U.S.C. § 1117(d);

(c) Costs and expenses;

(d) Attorneys' fees pursuant to 15 U.S.C. § 1117(a);

(e) Pre- and post-judgment interest; and

(f) Such other and further relief as the Court may deem just and proper according to the circumstances of the case.

Dated: December 20, 2017.

Respectfully submitted,

BY:   <u>s/ John F. McAllister</u>

John F. McAllister
(JM9272)
McALLISTER OLIVARIUS
63 Putnam Street
PO Box 173
Saratoga Springs, New York 12866
Telephone: (518) 633-4775
Facsimile: (781) 658-2480
Email: jmcallister@mcolaw.com

The Pearce Building
West Street
Maidenhead, SL6 1RL
United Kingdom
Telephone: +44 1628 567 567